**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **JOSEPH MILLER,** | : | |
| | : | **2:13-CV-00124 (Miller)** |
| **Plaintiff,** | : | **2:13-CV-00125 (Crozier)** |
| | : | **2:13-CV-00126 (Coleman)** |
| **v.** | : | **2:13-CV-00127 (Gibbs)** |
| | : | **2:13-CV-00129 (Johnson)** |
| **FOOD CONCEPTS INTERNATIONAL,** | : | **2:13-CV-00130 (Troyer)** |
| **LP, et al,** | : | **2:13-CV-00131 (Autrey)** |
| | : | **2:13-CV-00132 (Tigner)** |
| **Defendants.** | : | **2:13-CV-00133 (McEldowney)** |
| | : | **2:13-CV-00134 (Keegan)** |
| | : | |
| | : | **JUDGE ALGENON L. MARBLEY** |
| | : | |
| | : | **Magistrate Judge Deavers** |
| | : | |

**OPINION & ORDER**

## I. INTRODUCTION

This matter is before the Court on the following motions: Plaintiff Angie Tigner's

Objection to the Magistrate Judge's Order denying her Motion for Leave to File a Second

Amended Complaint (Tigner Doc. 66[1]); Defendants' Motion to Strike Plaintiff's Response to

Defendants' Reply to Plaintiff's Objection to the Magistrate's Order (Tigner Doc. 69); Plaintiff

Rachel Autrey's Objection to the Magistrate Judge's Order, Document No. 62 (Autrey Doc. 73);

and Defendants' Motion to Disqualify Plaintiffs' Counsel.  (Miller Doc. 100.)  For the reasons

stated herein, the Court **GRANTS** Defendants' Motion to Strike; **OVERRULES** Plaintiff

Tigner's Objection to the Magistrate Judge's Order denying her Motion for Leave to File a

Second Amended Complaint; **OVERRULES** Plaintiff Autrey's Objection to the Magistrate

---

[1] For ease of reference, the Court will use each Plaintiff's last name when referring to docket filings in *Tigner v. Food Concepts Int'l, LP*, No. 2:13-cv-00132, *Autrey v. Food Concepts Int'l, LP*, No. 2:13-cv-00131, or *Miller v. Food Concepts Int'l, LP*, No. 2:13-cv-00124.

1

Judge's Order, Document No. 62; and **DENIES** Defendants' Motion to Disqualify Plaintiffs'
Counsel.

## II.     BACKGROUND

Plaintiffs Angie Tigner, Rachel Autrey, and Joseph Miller commenced this action against
Defendants Darren Del Vecchio, Food Concepts International, LP, and Abuelo's International
LP (collectively, "Defendants") in the Franklin County Court of Common Pleas.  Seven other
plaintiffs also filed Complaints against the Defendants, and Defendants removed all the cases to
this Court on February 12, 2013.  The cases were consolidated for purposes of discovery and,
later, nine Plaintiffs' motions for prejudgment attachment.  Plaintiffs were former and current
employees of Abuelo's restaurant in Columbus, Ohio.  All Plaintiffs pleaded violations of the
Fair Labor Standards Act ("FLSA") and breach of contract claims.  (*See* Miller Doc. 38 at 1.)

Defendants requested on three separate occasions that Plaintiffs file a Complaint that
complied with the basic notice requirements of Federal Rule of Civil Procedure 8(a), or for the
case to be dismissed.  (*See* Miller Docs. 11, 14, 17.)  The Court ordered Plaintiffs to file
complaints that meet these requirements.  (*See* Miller Doc. 27.)  Plaintiffs' Amended Complaint
was filed October 15, 2013 (Miller Doc. 28), but its deficiencies compelled the Court to order
Plaintiffs to show cause why their lawsuit should not be dismissed.  (Miller Doc. 30.)

On January 17, 2014, Magistrate Judge Abel recommended to this Court that the
following claims be allowed to proceed: all Plaintiffs' claims under the Fair Labor Standards Act
("FLSA") and claims for breach of contract for wages and benefits; Plaintiff Autrey's hostile
work environment claim; and Plaintiff Stacie Johnson's claim for discrimination, segregation or
separation.  The Magistrate Judge recommended that all other claims by Plaintiffs be dismissed
with prejudice, on account of Plaintiffs' counsel's failure to tender Amended Complaints

meeting the requirements of Rule 8(a).  (Miller Doc. 36 at 72-73).  Neither party objected, and this Court adopted the Magistrate Judge's Report and Recommendation.  (Miller Doc. 38.)

On December 10, 2014, all Plaintiffs filed a Motion for Leave to File Second Amended Complaint.  (Miller Doc. 60.)  The Magistrate Judge denied the motion on February 28, 2015 (Miller Doc. 82), and Plaintiff Tigner objected.[2]  (Tigner Doc. 66.)

### III.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 72(a), a party may object to a Magistrate Judge's pretrial order on nondispositive matters.  This Court "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law."  Fed R. Civ. P. 72(a); *United States v. Curtis*, 237 F.3d 598, 603 (6th Cir. 2001).  Review under Rule 72(a) provides "considerable deference to the determinations of magistrates."  *In re Search Warrants Issued Aug. 29, 1994*, 889 F. Supp. 296, 298 (S.D. Ohio 1995) (citation omitted).

### IV.    ANALYSIS

#### A.  Defendants' Motion to Strike

As a preliminary matter, Defendants move to strike Plaintiff Tigner's Response to Defendants' Reply to Plaintiff's Objection to the Magistrate Judge's Order.  (Tigner Doc. 69.) Defendants argue that as the objecting party, Plaintiffs are not entitled to file a reply or response. *See* Fed. R. Civ. P. 72(a) ("A party may serve and file objections to the order within 14 days. . . .").  Defendants are correct that Federal Rule of Civil Procedure 72(a) does not contemplate the

---

[2] It is unclear whether Plaintiffs' counsel intended to object to the Magistrate Judge's order on behalf of all Plaintiffs, but given that their accompanying briefing discussed only the factual circumstances of Plaintiff Tigner, the Court will construe the Objection as pertaining only to her. In any case, because the Court overrules Plaintiff Tigner's Objection and the deadline for other Plaintiffs to lodge Objections has passed, the ruling will have no effect on the other Plaintiffs.

filing of a response by the objecting party.  Plaintiff counters that a district judge may "receive further evidence" when resolving objections under Federal Rule of Civil Procedure 72(b).  This observation is irrelevant because it applies to dispositive motions and prisoner petitions. Moreover, General Order No. COL: 14-01 clarifies that in the Southern District of Ohio, Eastern Division, "[n]o reply shall be filed without leave of court" when objecting to a Magistrate Judge's order.  *Id.* at 4.  Plaintiff did not seek leave to file a response to Defendants' reply to her objection.  Therefore, the Court **GRANTS** Defendants' Motion to Strike.

### B.  Plaintiff's Tigner's Objection to Denial of Leave to Amend

In her December 10, 2014 Motion for Leave to File Second Amended Complaint, Plaintiff Tigner argued that she had sought leave to amend her Complaint in order to: (1) establish the time period covered by their FLSA claims; (2) plead state law claims under the Ohio Constitution, Article II, § 34(a) and the Ohio Minimum Wage Fair Standards Act, Ohio Revised Code 4111, *et seq.*, because she was unaware of certain facts supporting such claims until she received new evidence from Defendants during discovery, including the Amended Affidavit of Miro Lucanin, former General Manager at Abuelo's restaurant, provided on November 6, 2014; and (3) clarify that her state law breach of contract claims covered the periods from September 22, 2007 to June 10, 2014.  (Tigner Doc. 54 at 4-5.)

On February 18, 2015, the Magistrate Judge issued an Order denying leave to amend to all Plaintiffs because he found that their allegations of Defendants' misconduct did not constitute good cause for the delay in filing their motions to amend.  (Tigner Doc. 62 at 8.)  The Magistrate Judge further concluded that Plaintiffs had failed to identify with specificity what discovery requests were improperly answered or what specific facts were learned from discovery that

justified the need to amend the complaint.  (*Id.*)  The facts that Plaintiffs did discuss in their motions to amend, like the Defendants' operation of the employees' tip pool, were already known to Plaintiffs well before they filed their motions.  (*Id.* at 9.)

Plaintiff Tigner now objects to the Magistrate Judge's Order.  She makes two arguments. (Tigner Doc. 66 at 8.)  First, she surmises that the Magistrate Judge had been "under the mistaken impression" that the discovery deadline had passed and, therefore, denied the motion, presumably because it would have prejudiced Defendants.  *See Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999) (holding that allowing amendment after the close of discovery creates significant prejudice to the opposing party).  Second, she argues that the Magistrate Judge should have applied the standard of Federal Rule of Civil Procedure 15(a)(2) that the court should "freely give leave when justice so requires," rather than applying the good-cause requirement of Rule 16.  (Tigner Doc. 66 at 8.)

A plaintiff may amend her complaint as a matter of course within 21 days after serving a complaint or within 21 days of being served with a responsive pleading or a motion under Rule 12(b), (e), or (f), whichever is earlier.  Fed. R. Civ. P. 15(a)(1).  Otherwise, a party may amend with leave of the Court, which "should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2); *see also Forman v. Davis*, 371 U.S. 178, 182 (1962) (holding that leave should be freely given absent "undue delay, bad faith or dilatory motive on the part of the movement, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . , [or] futility of amendment").  To deny leave to amend, "a court must find at least some significant showing of prejudice to the opponent."  *Duggins*, 195 F.3d at 834 (internal quotation marks omitted).  Absent prejudice, delay alone is not sufficient to deny leave to amend. *Dana Corp. v. Blue Cross & Blue Shield Mut. of N. Ohio*, 900 F.2d 882, 888 (6th Cir. 1990).

Once the deadline to file amended pleadings has passed, the Plaintiffs could file a Second Amended Complaint only if the court modified the Rule 16 scheduling order, which contains deadlines for parties to amend the pleadings. *Leary v. Daeschner*, 349 F.3d 888, 907 (6th Cir. 2003). A scheduling order modification is permitted "if Plaintiffs can demonstrate 'good cause' for their failure to comply with the original schedule, by showing that despite their diligence they could not meet the original deadline." *Id.*

The Court finds that the Magistrate Judge used the correct legal standard when he denied Plaintiff's motion. The scheduling order in this case stated that motions to amend the pleadings were to be filed by May 22, 2013. (Scheduling Order, Tigner Doc. 12 at 2.) Therefore, their Motion to File a Second Amended Complaint was filed after the deadline to amend the pleadings and thus must be construed as a request to amend the Rule 16 scheduling order. The Plaintiffs were required to show good cause under Rule 16. *See Leary*, 349 F.3d at 909.

Moreover, the Magistrate Judge reasonably concluded that Plaintiff Tigner lacked good cause to amend the scheduling order. Plaintiff failed to show that "despite [her] diligence [she] could not meet the original deadline. *Leary*, 349 F.3d at 907. Plaintiff does not point to any particular obstacles that would have prevented her from timely filing her motion, nor does she discuss any specific evidence obtained in discovery that would have justified the need for an amended pleading. In addition, Plaintiff "attempted to characterize [her proposed amended pleading] as a mere clarification" of her claims, which the Sixth Circuit has found to be additional support for a district court's decision not to allow leave to amend a complaint. *Id.* at 907-08.

Finally, the Court notes that even if it did consider Plaintiff's Response to Defendant's Reply to her Objection, which was stricken as discussed above, the facts asserted therein are also insufficient to show good cause to amend the scheduling order under Rule 16.

Plaintiff Tigner's Objection to the Magistrate Judge's denial of her Motion for Leave to Amend is **OVERRULED**.

### C. Plaintiff Autrey's Objection to Discovery Conference Order

Plaintiff Autrey's Objection purports to be an "Objection to the Magistrate's Order, Document No. 62." (Autrey Doc. 73.) Document 62 is the Amended Scheduling Order setting the date for the completion of discovery and the filing of dispositive motions. (Autrey Doc. 62 at 3.) From the briefing accompanying her Objection, it does not appear that Plaintiff sought to object to the scheduling order. Instead, it seems that she intended to object to the Discovery Conference Order. (Autrey Doc. 63.) In their response to the Objection, Defendants did not address any argument regarding objections to the Discovery Scheduling Order, taking the position that Plaintiff had in fact objected to the Amended Scheduling Order, that such an objection was untimely, and that if Plaintiff intended to object to another order, it was not the Defendants' obligation to respond to an objection that was not properly made.[3] (Autrey Doc. 65.) It is Plaintiff's responsibility to state clearly the nature of her objection so that the Court does not have to engage in guesswork, but in any event, the Court denies Plaintiff's objection for the reasons that follow.

---

[3] After briefing of this objection was completed, the docket was modified to reflect that this Objection pertains to all of the related cases. (Miller Doc. 86.) The Court recognizes that Defendants would not have been aware of this modification at the time they filed their Response to the Objection and that Defendants only responded to the Objection as to Plaintiff Autrey. Nor did Plaintiffs' briefing contain any discussion of any other individual Plaintiffs. In any event, the Court overrules the objection as to all Plaintiffs.

7

First, if Plaintiff intended to object to the Amended Scheduling Order (Autrey Doc. 62), her objection is untimely because it was filed on March 13, 2015, more than fourteen days after the Magistrate Judge issued the Amended Scheduling Order on February 23, 2015.  *See* Fed. R. Civ. P. 72(a) ("A party may serve and file objections to the order within 14 days after being served with a copy.").  Even if it were not untimely, Plaintiff offers no argument to support an objection to this Order.

Second, if she in fact intended to object to the Discovery Conference Order (Autrey Doc. 63), Plaintiff's objection fails on the merits.  In the Order, the Magistrate Judge addressed the FLSA claim period pleaded by Plaintiffs as follows:

> My impression is that plaintiffs['] FLSA claims arose during the 10 months DelVecchio was General Manager. I do not recall any testimony or documents that would show that DelVecchio's practices extended beyond his tenure. In fact, there is evidence that Lucinan and other managers did not follow those practices even during the time DelVecchio was General Manager. And Lucinan certainly did not continue the practices he now criticizes (and says he criticized when meeting with Young, Dorrington, and Myers) after DelVecchio departed.

(Autrey Doc. 63 at 4-5).  Plaintiff Autrey asks the Court to "correct these inaccuracies to prevent these proceedings [from] deviating from the Plaintiffs' claimed periods of employment." (Autrey Doc. 73 at 10.)  The Court finds that there are no inaccuracies to correct.  In his Order, the Magistrate Judge clarified that he did not have "the opportunity during the February 26 [discovery dispute] conference to review carefully the October 2013 amended complaint or the Court's orders construing that complaint.  The FLSA claims at issue in this lawsuit are those pleaded in the amended complaint as construed by later orders of the Court."  (Autrey Doc. 63 at 5.)

In her original complaint, Plaintiff Autrey asserted a cause of action under the FLSA, alleging that Defendant Del Vecchio, while serving as General Manager at Abuelo's, fraudulently misrepresented the hours Plaintiff worked and compensated her for fewer hours than she actually worked. (Autrey Doc. 1-1 ¶¶ 112-13.) In her First Amended Complaint, Plaintiff also pleaded violations of the FLSA but did not mention Defendant Del Vecchio by name, stating that "Defendants failed and/or refused to pay to Plaintiff Rachel Autrey regular and overtime wages in violation of the FLSA." (Autrey Doc. 34, Ex. D ¶ 167.) Although she stated her dates of employment at Abuelo's, she did not specify the time period in which Defendants allegedly violated the FLSA. (*See id.*) The Magistrate Judge correctly interpreted her pleading to show that Plaintiff Autrey stated FLSA claims only during this ten-month period, and no subsequent orders construing Plaintiff Autrey's First Amended Complaint have held otherwise. This Court concludes that the Magistrate Judge's Discovery Conference Order clarifying that Plaintiff Autrey's FLSA claims arose during the ten months in which Del Vecchio was Abuelo's General Manager were not "clearly erroneous or [ ] contrary to law." Fed. R. Civ. P. 72(a). Plaintiff Autrey's Objection is **OVERRULED**.

### D. Defendants' Motion to Disqualify Plaintiffs' Counsel

#### 1. Background

Defendants ask the Court to disqualify Plaintiffs' counsel, Wesley T. Fortune, in all of these ten related cases due to inappropriate contact with Miro Lucanin, former General Manager of Defendant Abuelo's International LP. Defendants argue that Mr. Lucanin is now supporting Plaintiffs in this litigation and has disclosed to Mr. Fortune certain privileged communications between himself and Defendants' counsel. They contend that Mr. Fortune is now a material witness to Mr. Lucanin's credibility and Defendants would be prejudiced if they could not

question Mr. Fortune as a witness. (Miller Doc. 100 at 2.) They argue that disqualification of Mr. Fortune is appropriate because these ethical breaches constitute violations of Ohio Rules of Professional Conduct 3.7, which prohibits lawyers from acting as an advocate in an adversarial proceeding where the lawyer is likely to be a necessary witness, and 4.2, which bars a lawyer from communicating about the subject of the representation with a person whom the lawyer knows to be represented by another lawyer in the matter. (*Id.* at 9, 12.)

In support of their motion to disqualify Mr. Fortune, Defendants cite his statements during the April 17, 2015 deposition of Plaintiff Stacie Johnson, in which Mr. Fortune admitted on the record that he had golfed on two occasions with Mr. Lucanin. (Miller Doc. 100, Ex. J.) Defendants' counsel, Ryan Green and Faith Whittaker, also submitted affidavits that after the deposition Mr. Fortune informed them that the dates on which the two men played golf were July 9, 2012 and June 25, 2013. (Miller Doc. 100, Ex. B.) The second golf outing took place six days after Mr. Lucanin was deposed by plaintiffs represented by Mr. Fortune in related cases against Defendants that have since settled. (*See* Miller Doc. 100, Ex. A.) After the instant cases were filed, Mr. Fortune took Mr. Lucanin's deposition again, on May 15, 2014. Defendants' counsel met with Mr. Lucanin prior to both depositions to prepare him and discuss the litigation with him. (*See* Miller Doc. 100, Ex. B.) Defendants also averred that their counsel had engaged in various other conversations related to litigation strategy with Mr. Lucanin. (*Id.*) Defendants contend that Mr. Lucanin disclosed privileged information when he stated in an affidavit that it was his intent to attend the April 13, 2012 deposition that he had received a subpoena to attend, but that he "did not attend because corporate counsel, Ryan Green, directed me not to attend and 'go ahead and leave the State.'" (Miller Doc. 100, Ex. F ¶¶ 28-29.)

Defendants have also submitted affidavits of Abuelo's employees Brandon Flores and David Handloser.  Both testified that Mr. Fortune was a frequent guest at Abuelo's while Mr. Lucanin was the General Manager, and that Mr. Lucanin frequently gave him discounted or complimentary meals and preferential seating when he dined there.  (Miller Doc. 100, Ex. C-D.) Mr. Flores also testified that on one occasion in late 2011 or early 2012 he was socializing at another restaurant with Mr. Lucanin when Mr. Fortune arrived to meet them and, while Mr. Flores could not recall the specifics of the conversation, he remembered that "Mr. Fortune mentioned the case he filed against Abuelo's to Mr. Lucanin during this meeting."  (Miller Doc. 100, Ex. D at 2.)

Finally, as evidence for Mr. Fortune's improper contact with Mr. Lucanin, Defendants cite a chain of events beginning with Plaintiffs' counsel's submission of an affidavit from Mr. Lucanin to the Court during a discovery status conference with the Magistrate Judge on October 28, 2014.  (*See* Miller Doc. 51 at 3 and Ex. C.)

This affidavit contained various statements attesting to the business practices of Defendants, the accuracy of which Defendants vigorously contest.  (Miller Doc. 100 at 5 n. 2.) Three days after receiving the affidavit, Defendants' Counsel Green left a voice mail message for Mr. Lucanin seeking information about the affidavit, and later that day, Mr. Fortune sent the following email to Defendants' counsel:

> Ryan/Faith—Please be advised that Miro Lucanin contacted Fortune Law Limited seeking to retain the firm in a labor and employment matter against Food Concepts International, L.P. and Abuelo's International L.P. among other possible parties to include the two of you.  As is the firm's practice, I a [sic] presently seeking a legal and ethical opinion from the firm's legal counsel regarding matters such as this.  Until said legal opinion is rendered, please refrain from attempting to contact or contacting Mr. Lucanin.

(Miller Doc. 100, Ex. G.)

In response to the email, Defendants filed a Motion for an Order to Show Cause why the proceedings should not be stayed due to this potential conflict of interest.  (Miller Doc. 51.) After a conference on November 21, 2014, Defendants' Counsel Green sent an email to Magistrate Judge Abel and Mr. Fortune stating that Defendants' Motion to Show Cause was moot because Mr. Fortune had declared that he was declining to represent or provide any assistance to Mr. Lucanin in his pursuit of claims against Defendants.  (Miller Doc. 100, Ex. H.) The Magistrate Judge issued an order on November 26, 2014, stating that Plaintiffs' counsel had told Mr. Lucanin that he would not represent him in any employment matter against Defendants; instructing the parties to continue briefing the issue of the stay; and noting that Defendants could ask the Court to strike Mr. Lucanin's affidavit.  (Miller Doc. 53.)  Plaintiffs subsequently filed a version of the affidavit in support of their Motions for Leave to Amend Their Complaint (Miller Doc. 60-5), and the Defendants filed a Motion to Strike the affidavit.  (Miller Doc. 65.)  When the Magistrate Judge denied the Plaintiffs' Motions, the Defendants' Motion to Strike became moot.  On January 22, 2015, the Magistrate Judge also issued an order mooting Defendants' Motion to Stay because the parties had not briefed the issue further, leading the Magistrate Judge to assume it was moot.  (Miller Doc. 70.)

Plaintiffs have since filed, along with their Response to Defendants' Motion to Disqualify Plaintiffs' Counsel, a new affidavit from Mr. Lucanin attesting, among other things, that: (1) he and Mr. Fortune are not good friends but know and like each other and occasionally socialize (Miller Doc. 117 at 1);  (2) he sometimes provided complimentary appetizers to Mr. Fortune and his family when they dined at Abuelo's, which was the common practice with frequent customers and had been followed by the previous General Manager (*id.* at 2); (3) he put Mr. Fortune on the "call-ahead seating list" when he telephoned the restaurant in advance of his

12

arrival (*id.*); (3) while employed by Abuelo's he never discussed Plaintiffs' lawsuits with Mr.

Fortune (*id.* at 3); (4) after he left Abuelo's, he contacted Mr. Fortune to discuss a potential

lawsuit against Defendants but Mr. Fortune declined to represent him (*id.*); (5) Mr. Fortune

informed him that he should not share any privileged information that he learned through

discussion with Defendants' counsel (*id.*); (6) during the course of their interactions, Mr. Fortune

had advised him that he represented clients that had an adverse interest to Mr. Lucanin's

employer (*id.*); and (7) he "did not divulge any litigation preparation and strategy to Mr.

Fortune."  (*Id.* at 4.)

### 2.  *Disqualification as a Material Witness*

A motion to disqualify "is the proper method for a party-litigant to bring an issue of

conflict of interest or the breach of an ethical duty to the court's attention."  *Hamrick v. Union*

*Twp., Ohio*, 81 F. Supp. 2d 876, 878 (S.D. Ohio 2000).  Courts have made clear that motions to

disqualify counsel "should be viewed with extreme caution because they can be misused as

techniques of harassment."  *Id.* (citing *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d

715, 722 (7th Cir. 1982)).  In deciding whether counsel should be disqualified, the Sixth Circuit

has set forth a three-factor balancing test that courts must consider:  "(a) the interest of the public

in the proper safeguarding of the judicial process; (b) the interest of the defendants; and (c) the

interest of the plaintiffs."  *Gen. Mill Supply Co. v. SCA Servs.*, Inc., 697 F.2d 704, 711 (6th Cir.

1982).

The Sixth Circuit has recognized that the codified Rules of Professional Conduct guide

federal courts in determining a disqualification motion.  *See National Union Fire Ins. Co. v.*

*Alitor, Inc.*, 466 F.3d 456, 457 (6th Cir. 2006), *vacated in part on other grounds*, 472 F.3d 436

(6th Cir. 2007); *see also* S.D. Ohio Civ. R. 83.3(h) ("The conduct of attorneys admitted to practice before this Court . . . is governed by the Model Federal Rules of Disciplinary Enforcement," which in turn provide that this Court abides by the code of professional conduct adopted by the highest court of the state in which this Court sits.).  Therefore, this Court applies the standards set forth in the Ohio Rules of Professional Conduct.  *OneBeacon America Ins. Co. v. Safeco Ins. Co.*, No. 1:07-358, 2008 WL 4059836, at *2 (S.D. Ohio Aug. 25, 2008).

> Ohio Rule of Professional Conduct 3.7 states the following:
>
> (a) A lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness unless one or more of the following applies:
>
>> (1) the testimony relates to an uncontested issue;
>>
>> (2) the testimony relates to the nature and value of legal services rendered in the case;
>>
>> (3) the disqualification of the lawyer would work *substantial* hardship on the client.

Ohio R. Prof'l Conduct 3.7 (emphasis in original).  The Rule's commentary clarifies the application of the third exception under Rule 3.7(a)(3):  "Whether the tribunal is likely to be misled or the opposing party is likely to suffer prejudice depends on the nature of the case, the importance and probable tenor of the lawyer's testimony, and the probability that the lawyer's testimony will conflict with that of other witnesses.  Even if there is risk of such prejudice, in determining whether the lawyer should be disqualified, due regard must be given to the effect of disqualification on the lawyer's client."  *Id.* at cmt. 4.  The Sixth Circuit has noted that the public interest is best served by the separation of the roles of advocate and witness because a lawyer who also serves as a witness may "forget whether he speaks as advocate or counsel, to the likely confusion of proceedings, as well as their embitterment. . . . Such embitterment is likely to occur

when one counsel undertakes to impeach the credibility of opposing counsel in his capacity of witness." *General Mill Supply*, 697 F.2d at 712.

The Court finds Mr. Fortune is not likely to be a necessary witness in this case.  The circumstances here are distinguishable from *General Mill Supply*, where the Sixth Circuit upheld a district court's disqualification of an attorney who was deemed a necessary witness because he was the only witness available who could testify to conversations that took place and without the testimony his clients' case would have failed.  *See id.* at 712 (holding that counsel was "the most indispensable witness" in the action); *see also Banque Arabe Et Internationale D'Investissement v. Ameritrust Corp*, 690 F. Supp. 607, 613 (S.D. Ohio 1988) (distinguishing *General Mill Supply* in part because the attorney was not the only witness who could testify to an issue in the case).

Although it might be helpful to Defendants' case to depose Mr. Fortune and such testimony could offer support for their position that Mr. Lucanin's affidavit lacks credibility, Mr. Fortune is not a necessary witness because Defendants have other options available to discredit Mr. Lucanin's testimony.  Defendants may make a motion to strike Mr. Lucanin's December 9, 2014 affidavit.  (Miller Doc. 60-5.)  They are also free to question Mr. Lucanin at trial about any conversations he may have had with Mr. Fortune.  In addition, there are other witnesses, such as Mr. Flores, who could testify to the relationship between Mr. Lucanin and Mr. Fortune and cast doubt on Mr. Lucanin's credibility.

Furthermore, Rule 3.7(a)(3) allows the Court to deny a disqualification motion even if the lawyer is likely to be a necessary witness at trial if it would work a substantial hardship on the client.  The commentary to the Rule elaborates that even if there is a risk of prejudice to the opposing party, the Court must still consider the effect of disqualification on the client.

Although there may be some prejudice to Defendants here, the Court finds that the risk of prejudice is outweighed by Plaintiffs' interests in selecting their own counsel, which is "an important public right and a vital freedom that should be preserved; the extreme measure of disqualifying a party's counsel of choice should be imposed only when absolutely necessary." *Banque Arabe*, 609 F. Supp. at 613 (citing *Melamed v. ITT Cont'l Baking Co.*, 592 F.2d 290, 293 (6th Cir. 1979)).

### 3.  *Improper Communication with Mr. Lucario*

Ohio Rule of Professional Conduct 4.2 provides:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer *knows* to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order.

Ohio R. Prof'l Conduct 4.2 (emphasis in original).  The commentary of Rule 4.2 further provides that "[i]n the case of a represented organization, this rule prohibits communications with a constituent of the organization who supervises, directs, or regularly consults with the organization's lawyer concerning the matter."  Ohio R. Prof'l Conduct 4.2 cmt. 7.  The Rule does not apply to communication with a represented person or an employee of such a person concerning matters outside the representation.  *Id.* at cmt. 4.  "Consent of the organization's lawyer is not required for communication with a former constituent."  *Id.* at cmt. 7.  Again, this Court must determine whether disqualification is warranted by balancing the client's interests in being represented by counsel of his choice, the opposing party's interest in a trial free from prejudice due to the disclosure of confidential information, and the public's interest in the fair administration of justice.  *Kitchen v. Aristech Chem.*, 769 F. Supp. 254, 258 (S.D. Ohio 1991).  Defendants attempt to analogize the instant case to two cases where federal district courts have

supported "limitations" on *ex parte* contact with former or current employees who have had

"extensive exposure to privileged information."  (Miller Doc. 100 at 13.)

In *Camden v. State of Maryland*, the court disqualified the plaintiff's attorneys after their

*ex parte* contact with the defendants' former employee who had participated in the internal

investigation of the plaintiff's employment discrimination allegations.  910 F. Supp. 1115, 1116-

17 (D. Md. 1996).  After the employee left the defendants' employment on unfriendly terms, he

had *ex parte* contact with the plaintiff's attorneys, who submitted an affidavit from him in

support of the plaintiff's motion for leave to file a second amended complaint.  *Id.* at 1117.  In

the affidavit, the former employee claimed to have been told by one of the defendants, in

reference to the plaintiff's allegations of racial discrimination, that a white woman like the

plaintiff should not be counseling black male students, a piece of evidence that the court noted

was a "bombshell."  *Id.*

At a special deposition ordered by the court, the former employee admitted that he had

divulged confidential information to the plaintiff's attorneys.  *Id.* at 1118.  There was also

evidence that the defendants' attorneys had expressly identified the employee to the plaintiff's

attorneys as the "principal contact person" for the defendants regarding the case and during the

initial investigation had asked one of the attorneys not to contact the employee *ex parte*, to which

the attorney agreed.  *Id.* at 1122.  Based on the employee's testimony and the other evidence,

including the plaintiff's counsel's citation in a motion of the defendants' attorney's reaction to a

conversation with the former employee, the court found that there was "little room for doubt"

that the attorneys: (1) knew that the employee had been extensively exposed to the confidential

information including confidential documents; (2) never told the former employee not to disclose

the information; and (3) eventually came into possession of the information.  *Id.* at 1122-23.

17

Here, by contrast, Plaintiffs have presented evidence that Mr. Fortune had advised Mr. Lucanin not to disclose privileged information, that while employed by Abuelo's he did not discuss the litigation with Mr. Fortune, and that after his resignation he gave Mr. Fortune only "factual information," set forth in his affidavits about labor and employment practices he had observed during his employment. (Miller Doc. 117 at 3.) Defendants have not provided sufficient contrary evidence that Mr. Lucanin had extensive exposure to confidential information or that he shared it with Mr. Lucanin.

In *MMR/Wallace Power & Industries, Inc. v. Thames Associates*, the court disqualified the defendant's counsel after counsel hired the plaintiff's former office manager as a trial consultant. 764 F. Supp. 712, 714 (D. Conn. 1991). The Court concluded that disqualification was warranted because the former employee had confidential information pertaining to trial preparation and strategy, he disclosed this information to opposing counsel's attorney, and opposing counsel's continued representation of the defendant "threaten[ed] to 'taint' all further proceedings in the case." *Id.* at 724.

*MMR/Wallace* is distinguishable from the instant case because the former employee in question "functioned almost exclusively in the capacity of trial consultant and paralegal for [plaintiff]" for ten months, performing activities such as reviewing and digesting documents obtained during discovery, preparing analyses about issues raised in litigation, assisting counsel in preparing for depositions and answering interrogatories, and participating in litigation strategy meetings. *Id.* at 724-25. Moreover, in concluding that the proceedings would be tainted if counsel were not disqualified, the *MMR/Wallace* Court noted that this was "not simply a case in which defense counsel unknowingly spoke with a prospective witness with knowledge of the facts surrounding the underlying litigation," and pointed out that counsel actually interviewed the

18

former employee and sought to employ him as his exclusive trial consultant.  *Id.* at 727.  The court concluded that "at the very least, a prudent attorney would have inquired of plaintiff's counsel regarding their relationship with [the former employee] prior to offering him a consulting contract" and would have withdrawn his offer once he was contacted by plaintiff's counsel.  *Id.*  Here, after getting an outside opinion on the matter, Mr. Fortune declined to represent Mr. Lucanin in his prospective suit against Abuelo's.  (Miller Doc. 100, Ex. H.)

The Court finds that the extreme sanction of disqualification is not warranted in this case because there is not enough evidence to establish that Mr. Lucanin provided confidential information to Mr. Fortune or that Defendants were prejudiced thereby.

Although Mr. Lucanin's involvement in Defendants' litigation strategy was significantly less than that of the former employee in *MMR/Wallace*, there is evidence, notably in his affidavit, that he regularly consulted Defendants' attorneys and participated in almost daily conference calls with them regarding the litigation, as well as affidavits from Mr. Green and Ms. Whittaker attesting that they spoke with Mr. Lucanin about deposition preparation, litigation strategies, and/or counseling related to managing Plaintiffs who were still employed at Abuelo's. (Miller Doc. 100 Ex. F ¶¶ 18-19; Ex. B ¶ 4.)  Therefore, Rule 4.2 would apply to any communication between Mr. Fortune and Mr. Lucanin concerning the subject of the litigation. *See* Ohio R. Prof'l Conduct 4.2 cmt. 7 ("[T]his rule prohibits communications with a constituent of the [represented] organization who supervises, directs or regularly consults with the organization's lawyer concerning the matter.").

Although the friendship between Mr. Lucanin and Mr. Fortune could raise questions about the ethics of Mr. Fortune's actions, the evidence to which Defendants point does not

establish that Mr. Lucanin disclosed any confidential information to Mr. Fortune during or after

his employment at Abuelo's.  Nor does it show that Mr. Fortune and Mr. Lucanin discussed the

subject of the representation during Mr. Lucanin's employment.  Brandon Flores's testimony

that, while socializing with Mr. Lucanin, he once heard "Mr. Fortune mention[] the case he filed

against Abuelo's to Mr. Lucanin," does not rise to the level of improper communication under

Rule 4.2 that would merit disqualification because Mr. Flores could not recall the specifics of

what was said.  (Miller Doc. 100, Ex. D ¶ 5.)  Therefore, the Court cannot assume that Mr.

Lucanin communicated any confidential information to Mr. Fortune in this conversation.

Similarly, Mr. Fortune's acknowledgement that he played golf with Mr. Lucanin does not show

that Mr. Lucanin and Mr. Fortune communicated "about the subject of the representation," *see*

Ohio R. Prof'l Conduct 4.2, or that Mr. Lucanin disclosed privileged information to Mr. Fortune.

(*See* Miller Doc. 100, Ex. B.)  And although Mr. Fortune's email to Mr. Green and Ms.

Whittaker was inappropriate, it does not warrant disqualification because he subsequently

declined to represent Mr. Lucanin, and Mr. Lucanin stated in his affidavit that he had not

disclosed details of Defendants' litigation preparation or strategy to Mr. Fortune.  (Miller Doc.

117 at 4.)  Some of Mr. Lucanin's statements in his affidavit may indeed be troubling, in

particular, his statement that "upon Attorney Green's advice and following his direction, I left

the State of Ohio to go out of town" instead of attending the deposition scheduled for April 13,

2012.  (Miller Doc. 100, Ex. F ¶¶ 28-29)  But this statement does not rise to the level of

prejudice to Defendants that would merit disqualification, because Defendants have introduced

documentary evidence that Mr. Green had told Mr. Lucanin he was free to go out of town

because the deposition was to be rescheduled.  (*See* Miller Doc. 118 Ex. A.)

None of these incidents shows sufficient prejudice to warrant disqualification.  Even assuming *arguendo* that Mr. Lucanin divulged to Mr. Fortune any confidential information he may have possessed, Defendants have not shown that the proceedings would be tainted or the public interest in fair judicial proceedings compromised such that the Court should deprive Plaintiffs of the right to counsel of their choosing.

Although Mr. Fortune has sometimes shown questionable judgment throughout this protracted litigation, the Court concludes that he should not be disqualified as Plaintiffs' counsel because there is not significant prejudice to Defendants or damage to the public interest that would warrant the extreme measure of disqualification.  If in the course of these proceedings Defendants become aware of privileged information that Mr. Lucanin has revealed to Plaintiffs' counsel, they may certainly bring that information to the Court's attention and renew their motion to disqualify Mr. Fortune.

Defendants' Motion to Disqualify Plaintiffs' Counsel is **DENIED**.

## V.     CONCLUSION

For the reasons stated above, Defendants' Motion to Strike Plaintiff Tigner's Response to Defendants' Reply to Plaintiff's Objections to the Magistrate Judge's Order is **GRANTED**; Plaintiff Tigner's Objection to the Magistrate Judge's Order denying her Motion for Leave to File a Second Amended Complaint is **OVERRULED**; Plaintiffs' Objection to the Magistrate Judge's Discovery Conference Order is **OVERRULED**; and Defendants' Motion to Disqualify Plaintiffs' Counsel is **DENIED**.

**IT IS SO ORDERED.**

                **s/ Algenon L. Marbley**
                **ALGENON L. MARBLEY**

**DATED: October 16, 2015**        **UNITED STATES DISTRICT JUDGE**